# CHARLESTON.

CARRELL v. MITCHELL et al.

Submitted June 9, 1892.—Decided November 26, 1892.

1. EJECTMENT—TITLE.

In an action of ejectment, where the plaintiff and defendant derive their title from the same grantor, it is unnecessary that the plaintiff, in making a *prima facie* case, should trace his title furthur back than to said grantor. (p. 132.)

2. EJECTMENT—NOTICE.

In order that a defendant should be entitled to interpose an equitable defence, such as was attempted in this case, notice must be given of such intention in writing, as required by section 22 of chapter 90 of the Code. (p. 133.)

3. TRUSTS AND TRUSTEES—DELINQUENT LANDS—SALE—TAXES—TITLE.

If a party holding a deed of trust upon a tract of land, to indemnify him as surety, pays the taxes on said tract of land, which is assessed to the grantor in said trust in the district where it is located, and said grantor conveys said land to another party, who has the land placed upon the land-book in a different district from the one in which it is located, and suffers the same to be returned delinquent and sold for taxes, and the party entitled to the benefit of said trust purchases said land at a trust-sale under said trust-deed, his title so acquired will not be affected by said delinquent sale and a deed made in pursuance thereof. (p. 133.)

*T. E. Davis* for plaintiffs in error cited 14 Am. Dec. 73; 51 Am. Dec. 147; 60 Am. Dec. 407; 95 Am. Dec. 788; 100 Am. Dec. 299; 81 Va. 236; 4 Burr. 2487; 11 Gratt. 172; Ad. Eject. 43; 30 W. Va. 505; 32 W. Va. 600; 21 How. 483; 24 How. 402; 113 Wall. 330; 76 Va. 288; 75 Am. Dec. 450; 23 W. Va. 675; 12 W. Va. 1; 1 Rob. 424; 26 Mitch. 288; 28 Mich. 76; 81 Am. Dec. 58, n. 58; 84 Am. Dec. 155; 68 Am. Dec. 274, n. 280; 29 Mich. 364; 90 Am. Dec. 230.

*Peck & Ayres* for defendant in error cited Hutch. Land Titles, § 505; 75 Va. 493; 6 Wall. 642; 2 Grenl. Er. § 307; 32 W. Va. 600; 3 Wash. Real Prop. (3d Ed.) 111 112; Id. 109; 49 Am. Dec. 379; Hutch. Land Titles, § 496, 498, 499; 9th Gratt. 223; 6 W. Va. 200; Tyler on Eject. 543–535; 2 Wash. Real Prop. 159, 160; 10 Gratt. 231; 75 Va. 300; 15 Gratt. 279; 16 W. Va. 355; Blackw. Tax Titles 140, 145, 146; Id. 147, 148, 151, 154, 155, 160, 163, 184, 185; Code (1868) c. 29, s. 31; 16 W. Va. 345; Id. 108; 19 W. Va. 223; 19 W. Va. 153; 26 W. Va. 702; 18 W. Va. 598, 610; Id. 612, 628, 629; 19 W. Va. 564: 23 W. Va. 675; 24 W. Va. 173, 177, 178.

ENGLISH, JUDGE:

This was an action of ejectment brought by S. D. Carrell against R. B. Mitchell in the Circuit Court of Ritchie county, to April rules, in the year 1886, for the recovery of a tract of land containing sixty seven and one half acres, situated in said county.

On the 15th day of July, 1886, R. B. Mitchell, Jr., the landlord of said R. B. Mitchell, appeared by counsel, and asked to be made defendant in place of said R. B. Mitchell, and on his motion he was ordered to be made defendant, and thereupon he interposed a plea of not guilty, upon which issue was joined and the case was continued.

On the 5th day of March, 1888, the case was submitted to a jury, and, the plaintiff having closed his evidence, the defendant demurred thereto and the plaintiff joined therein, and the jury found that, "if the law be for the plaintiff upon the demurrer of the defendant to the evidence, for the plaintiff the land and premises in the declaration mentioned, in fee-simple estate" and that he was entitled to the possession thereof, and that the defendant was in possession of said land at the time of the institution of this suit, and that he unlawfully withheld the possession thereof from the plaintiff; and they further found one cent damages for the plaintiff against the defendant. But, if the law be for the defendant on the demurrer to the evidence, then they found for the defendant.

On the 19th day of October, 1888, the court, having heard

the argument of counsel on said demurrer, was of opinion that said evidence was sufficient in law for the plaintiff to have and maintain his said action against the defendant, and judgment was rendered that the plaintiff recover the possession of said land, and his costs.

The defendant excepted to the rulings of the court, and tendered two bills of exceptions numbered 1 and 2, which were signed, sealed and saved to him and made a part of the record in the cause.

On the 31st day of October, 1889, the following order was entered : "A certified decree from the chancery side of this court having been filed in this cause, setting aside and annulling the verdict and judgment heretofore rendered in this cause, and reinstating the same upon the docket, and the cause being reinstated upon the docket for trial upon the declaration and pleas. with issues joined heretofore, the parties being present by their attorneys, the cause was again submitted to a jury, which submission the 1st day of November, 1889, resulted in a verdict for the plaintiff; and thereupon the defendants, by their counsel, moved the court to set aside the verdict of the jury and grant them a new trial; because the verdict was contrary to the law and the evidence, which motion was overruled by the court, and judgment was rendered on said verdict for the land in question, and the possession thereof."

Upon the trial the defendant took twelve bills of exceptions, which were signed, sealed and made part of the record, setting forth among other things the evidence, which was introduced, and the instructions which were asked, by the plaintiff and the defendant, and from the judgment aforesaid the defendant obtained this writ of error.

Counsel for the plaintiff in error in his petition for this writ of error says : "It appears that the defendant derived title from one S. J. Horn, from whom plaintiff claimed title under his trust deed." It is claimed as error that the court allowed the plaintiff to show that he derived title by means of a sale under a trust-deed executed by S. J. Horn, without showing any title in said Horn, but the admission on the part of the plaintiff in error that the defendant claimed title from the same source, to wit : from said S. J.

Horn, obviates the necessity of showing how said Horn derived his title.

It is claimed that the plaintiff, S. B. Carrell, made fraudulent representations in the presence of defendant Mitchell, and induced him to believe that the debt secured by the deed of trust under which he claims to have purchased the property in controversy was paid off and satisfied, and the deposition of R. B. Mitchell, Jr., was offered in evidence to prove said fact, but was excluded by the court, and the action of the court in excluding said deposition is assigned as error.

That the Circuit Court acted properly in rejecting said evidence is apparent, for two reasons: In the first place, said conversation between the plaintiff, Carrell, and R. B. Mitchell, Jr., appears to have occurred on the 8th day of July, 1886, while said R. B. Mitchell, Jr., purchased said land at the tax sale on the 14th day of October, 1879, nearly seven years before, and it could have had no influence whatever in inducing him to make said purchase. And, again, the defence would be classed as an equitable defence, and under the statute could not be made available unless notice in writing of such defence had been filed with his plea. I can therefore see no error on the part of the court in rejecting that portion of said deposition which related to said conversation.

At this point we may inquire what title or estate R. B. Mitchell, Sr., acquired by his deed from S. J. Horn. At the time of his purchase the deed of trust from Solomon J. Horn to William Douglass, trustee, dated the 4th day of May, 1869, was duly recorded in the clerk's office of the County Court of Ritchie county, and by his purchase from said Horn the said R. B. Mitchell only purchased the equity of redemption, and when said sale for taxes was subsequently made, on the 13th day of October, 1879, if the same was regular in every respect, the said R. B. Mitchell, Jr., only acquired thereby such title as was vested in said R. B. Mitchell, Sr. But, in passing upon the regularity of said sale, the validity of said deed to R. B. Mitchell, Jr., and the character of the title, if any, acquired thereunder, we must look to the statute which was in force at the time the delinquent list was returned and the sale made.

The proceedings for the sale of this tract of land were under the provisions of chapter 117 of the Acts of 1872–73, and section 25 of said chapter provides :

"When the purchaser of any real estate so sold, his heirs or assigns, have obtained a deed therefor according to the provisions of this chapter, and caused the same to be admitted to record in the office of the clerk of the County Court of the county in which such real estate, or the greater part thereof, may lie, such estate shall stand vested in the grantee in such deed in and to said real estate as was at the commencement of, or at any time during, the year or years for which the said taxes were assessed, vested in the party assessed with the taxes for which it was sold, and in any other person or persons having title thereto who have not, in his or their own name, been charged on the assessor's books of the proper county or district with the taxes on said real estate for the year or years for the taxes of which the same was so sold, and actually paid the same as required by law, notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appear on the face of the proceedings of record in the office of the clerk of the County Court, and be such as materially to prejudice the rights of the owner whose real estate is so sold, and it be clearly proven to the court or jury that such diligence has been exercised by the party in whose name it was sold that but for such irregularity the said party would have redeemed the same under the provisions of the fifteenth and sixteenth sections of said chapter." * * * "If at the time of such sale the real estate sold be under a mortgage or deed of trust, or there be any other lien or incumbrance thereon, and the mortgagee, trustee, *cestui que trust*, or person holding any such lien or incumbrance, shall fail to redeem the same within the time prescribed by the fifteenth section of this chapter, then all the right, title, and interest of such mortgagee, trustee, *cestui que trust*, and of the persons holding any such lien or incumbrance on the real estate so sold and not redeemed, shall pass to and be vested in the grantee in such deed; and his title to the premises shall in no way be affected or impaired by any such mortgage, deed of trust, lien, or in-

cumbrance." And section 31 of chapter 54 of the Acts of 1875 provides that "there shall be in the land book for every assessment district separate lists for the district included in such district, and every tract or lot of land shall, for the purpose of taxation, be entered in the list for the district in which the same or the greater part thereof is situated, and the entries in each district list shall be arranged in the alphabetical order of the names of the owners."

Now, so far as appears from this record, R. B. Mitchell, in whose name said land appears to have been returned delinquent and sold, made no effort whatever to redeem the same, but acquiesced in the same; and the question presented for our consideration is as to the effect of said sale upon the rights of the plaintiff, S. B. Carrell, who appears to have purchased said tract of land under the deed of trust executed by said Solomon J. Horn on the 14th day of July, 1884, and which was conveyed to him by the trustee appointed to execute said trust on the 1st day of October, 1885.

It appears from records filed in the clerk's office that said tract of land was assessed for the years 1875, 1877, and 1878 to S. J. Horn, in Clay district, in Ritchie county, and for the same years it appears to have been assessed to R. B. Mitchell, in Grant district, in the same county, and was returned as delinquent in the name of said Mitchell, and described as located in Grant district. It also appears from the records that said land was not returned as delinquent among the lands so returned from Clay district in said county.

It appears, further, from the report of the surveyor, filed and recorded as a part of said proceedings for sale of said land, that said sixty seven and one half acres of land were located in Clay district, in said county. Under the statute the said S. B. Carrell had the right to redeem said land, he being the party entitled to the benefit of said trust-lien. At the time the trust was executed, he no doubt was aware of the fact that the land was located in Clay district, and the evidence shows that he paid the taxes assessed against S. J. Horn on said land in said district. This, of itself, is a

circumstance which was calculated to mislead said Carrell. He might well presume that, if the land was taxed to said Horn, it was taxed to no other person, and the fact that said tract of land was assessed to Mitchell in Grant district, and returned delinquent as located in said district, is a circumstance which would materially prejudice the rights of said Carrell. Knowing, as he did, that the land was located in Clay district, even if he had seen the advertisement required by the statute at the front door of the courthouse or in the newspapers, he might well have been misled by the fact that it was described as being located in Grant district.

As to the right to redeem lands so returned as delinquent, section 15 of said chapter places the person having a right to charge such real estate for a debt upon the same footing as the owner ; and we think the rights of said Carrell, who was the beneficiary in said trust, were materially prejudiced by said irregularity, and the fact that he paid the taxes on said land in Clay district for the express purpose of preventing it from being returned delinquent, and in order to save himself, and the fact that said land was advertised and sold as delinquent, the description in said advertisement locating it in a different district from that in which the land is situated, appear to me to be such irregularities as would avoid the deed made in pursuance of said sale.

In the case of *McCallister* v. *Cottrille*, 24 W. Va. 174, this Court, in construing the section of the statute which I have been considering, holds : "2. The twenty fifth section of chapter 117 of the Acts of 1872–3, which declares that a deed obtained by a purchaser of land at a tax sale according to the provisions of said chapter shall be valid, 'notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appear on the face of the proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice the right of the owner whose real estate is sold, and it be clearly proven to the court or jury that such diligence has been exercised by the party in whose name it was sold that but for such irregularity the said party would have redeemed the same under the provisions of the fif-

teenth and sixteenth sections of said chapter,' does not authorize the introduction of parol testimony to affect the validity or the invalidity of a tax-deed. But the legal construction and effect of said provision is to declare that the court or jury shall determine from the proceedings of record on which such deed is founded, and from the face of the deed itself, whether or not such irregularity appears thereon as would mislead a man of ordinary business capacity, and was of such a character as would be calculated to prevent the owner from redeeming his land, and thus materially prejudice his rights. And, if such irregularity thus appears, it must be conclusively presumed that the owner was thereby prejudiced and his rights materially affected, and such deed must be held and declared void."

As we have seen, a party having a deed of trust on the land, so far as the right to redeem is concerned, occupies the same attitude that the owner does; and if he is prejudiced, and prevented from redeeming the land, by irregularities in the proceedings, the same result should follow therefrom.

In the case of *Williamson* v. *Russell*, 18 W. Va. 629, GREEN, J., delivering the opinion of the Court, after discussing at some length section 25 of said chapter 117, concludes as follows : "The true construction is that the courts must determine whether the particular irregularity is such as would mislead a man of ordinary intelligence, and was calculated to prevent him from redeeming his land, and thus materially prejudice his rights. If the irregularity was of this character, and would naturally produce this result, it vitiates the tax deed; otherwise, it does not."

Again, section 18 of said chapter 117 of the acts of 1872–73 provides as follows : "When, also, an entire tract of land is so sold and not redeemed within the said one year, the purchaser, his heirs or assigns, at his or their expense, shall have a report made by the surveyor of lands for the county in which the same is situated—or if he be interested, or there be no such surveyor, then by some person appointed by the county court of the county in which the same was sold, for that purpose, who shall, before some person authorized to administer an oath, take an oath that he will

faithfully discharge the duties of his office according to the best of his skill and judgment—to the clerk of the county court, specifying the metes and bounds of land sold, giving such description thereof as will identify the same ; and the said clerk, unless there be some valid objection to the report, shall order the same to be recorded in his office, and a record thereof shall be made accordingly."

An attempt was made to comply with this section, and a report was returned to the clerk of the County Court, but, so far from giving such description as would identify the land advertised and sold, said report described the land as lying in Clay district, whereas it was advertised and sold as located in Grant district, in said county, and the clerk, in making the deed to the purchaser at said tax-sale, referred to said report for description ; showing the importance of having the land properly described, or, in other words, that under said chapter it will be an irregularity which will vitiate and render a tax deed void to advertise and sell under one description, and, when the surveyor's report comes in, to convey a tract of land in an entirely different locality.

So, in the case of *Orr* v. *Wiley*, 19 W. Va. 151, this Court held as follows: "The sheriff of Wetzel county sells land delinquent for the nonpayment of taxes, and the clerk of that county makes to the purchaser a deed for the same, but the purchaser, before receiving the deed, does not have a report made according to the eighteenth section of chapter 117 of the Acts of 1872–73. Held, the deed is null and void."

By reference to the report of the surveyor in this case it will be perceived that the sixty seven and a half acre-tract is described as situated in Clay district and located on Bond's creek, a tributary of Hughes river, and the clerk certifies that the "foregoing is a true copy of a report from John Douglass to R. B. Mitchell for a tract of sixty seven and one half acres of land on Goose creek, admitted to record this 9th day of June, 1881," and in the delinquent list it was described as located on Goose creek, in Grant district.

In the case of *Orr* v. *Wiley, supra,* the surveyor made a certificate accompanied by a plat, which certificate described

the land as situated on the waters of Fishing creek, Archer's fork, and McElroy, in Wetzel county, and gave the metes and bounds, but the court said: "There is nothing in this certificate or report, if it may be so termed, which in any way identifies the tract of land referred to therein with the tract sold by the sheriff or the tract conveyed to the purchaser."

The same may with propriety be said with regard to the report in this case; and following the ruling in the case of *Orr* v. *Wiley, supra,* we must conclude that said tax deed was ineffective and void.

Bill of exception No. 1 was taken to the action of the court in overruling the defendant's objection to the admission of the deed of trust from S. J. Horn to William H. Douglass, trustee, on said land, to secure the plaintiff, Sanford B. Carrell, the payment of a note for six hundred dollars, and also to indemnify him as surety in an injunction bond, which was objected to by defendant, and the objection overruled. This objection appears to me to have been properly overruled, as the said trust-deed was a link in the plaintiff's title, and I can see no objection to its being offered and read in evidence.

Exception No. 2 was to the action of the court in allowing the plaintiff to read in evidence the tax deed from the clerk to the defendant, R. B. Mitchell, Jr., with a view of invalidating it, as was stated by counsel for plaintiff at the time it was offered; and so far as I can discover, the court committed no error in overruling the objection to the admission of said deed for the purpose aforesaid.

Bill of exceptions No. 3 contains the record of the proceedings to sell said land as delinquent; also, the deeds from S. J. Horn to W. H. Douglass; also, the deed fram S. J. Horn to W. B. Mitchell; also, the order substituting Thomas E. Davis as trustee in the room and stead of W. H. Douglass, who had died, and the deed from Thomas E. Davis, trustee, to S. B. Carrell; also, the testimony of S. B. Carrell, identifying the land reported by the surveyor as the land in controversy, and proving that he paid the taxes thereon assessed in Clay district in the name of S. J. Horn, and offered to prove that he had sustained loss be-

fore the sale under said trust deed by Thomas E. Davis, trustee—to which evidence the defendants objected, and the same was excluded. At this point. the plaintiff rested his case, and the defendant moved the court to exclude all of said evidence from the jury, because the plaintiff had not shown that he became liable and did pay under said deed of trust, which motion was considered by the court and properly overruled.

Bill of exceptions No. 4 was taken to the action of the court in refusing to allow R. B. Mitchell. Sr., to prove that he had paid for the land purchased by him and others of S. J. Horn, which evidence was immaterial and was properly rejected.

Bill of exceptions No. 5 was to the action of the court in refusing to allow the declarations of S. B. Carrell to the effect that said trust had been satisfied, which point has already been considered and passed upon as being improper and irrelevant.

The sixth bill of exceptions is, in effect, to the same ruling, and the evidence offered was properly rejected.

The seventh bill of exceptions was taken to the action of the court in excluding the deposition of R. B. Mitchell, Jr., or so much thereof as related to the same subject, which exception I do not think was well taken.

The eighth exception was as to the exclusion of a letter signed by S. B. Carrell, partly upon the same subject, which letter was properly excluded.

The ninth exception was as to the exclusion of declarations of said Carrell to S. J. Horn, in the presence of R. B. Mitchell, Sr., after Mitchell's purchase from Horn, that the trust had been paid off, and that he promised to release it, which evidence was properly rejected, for the reason that such conversation, if it occurred, was subsequent to Mitchell's purchase, and had no effect in inducing him to purchase the land.

The tenth bill of exceptions contains the two instructions which were asked by the plaintiff, and which were given by the court, which instructions are as follows: "Plaintiff's instruction No. 1: If the jury believe from the evidence that S. B. Carrell was a creditor of Horn, and as

such paid the taxes on the land in controversy for the years for which it was returned delinquent, then the same was improperly returned delinquent, and the tax-deed conferred no title on R. B. Mitchell, Jr. Plaintiff's instruction No. 2: The jury is instructed that when S. J. Horn executed the deed to R. B. Mitchell, Sr., he conveyed nothing but the equity of redemption, or right to pay off the deed of trust and prevent the sale of the land conveyed therein; and if they believe from the evidence that the sixty seven and one half acres of land was sold by Thos. E. Davis, trustee, and purchased by S. B. Carrell, that such sale vested in the purchaser, S. B. Carrell, the legal title to said land, and they should find for the plaintiff." And, as these instructions appear to propround properly the law, I think the court committed no error in overruling said objection.

Bill of exceptions No. 11 sets forth the instructions asked for by the defendant, and the action of the court in reference thereto, as follows: "Defendant's instruction No. 1: The jury are instructed that a purchaser under a tax deed takes all the right, title, and interest of every person who at the time of sale had any claim thereon, by reason of trust or otherwise, emanating from the person in whose name said land was sold, or those claiming under such person in whose name such land was sold, unless the proceedings in the clerk's office show the invalidity of the deed. Defendant's instruction No. 2: The jury are instructed that R. B. Mitchell, Jr., having purchased the land described in the declaration for taxes, and having taken deed therefor, and having the same duly recorded in the county of Ritchie, in which said land is located, he thereby became invested with such estate in and to the land so purchased by him as, at the commencement of, or at any time during, the year for which the said taxes were assessed, vested in the party assessed with said taxes. Defendant's instruction No. 3: The jury are further instructed that if at the time of such sale the said land described in the declaration was under a mortgage or deed of trust, or if there was any other lien or incumbrance thereon, and such mortgagee, trustee, *cestui que trust,* lienor, or incumbrancer had failed to redeem the same

within the time prescribed by law, then all the right, title, and interest of such mortgagee, trustee, *cestui que trust,* lienor, passed to and became invested in R. B. Mitchell, Jr., at such tax sale, and his title to the said land shall in no way be affected or impaired by such mortgage, deed of trust, lien, or incumbrance.  Defendant's instruction No. 4:  The jury are instructed that R. B. Mitchell, Jr., having purchased the land in the declaration described, of sixty seven and one half acres, and having taken a deed therefor and had the same duly admitted to record, and that same land had been conveyed to Thomas E. Davis, trustee, before the said land was sold for taxes, to secure S. B. Carrell, then that the said tax deed of said Mitchell, Jr., extinguished the title vested in said trustee by said deed of trust.  Defendant's instruction No. 5 :  The jury are instructed that the deed made by Thomas E. Davis, trustee, to S. B. Carrell, for the sixty seven and one half acres of land described in the declaration, having been made after the defendant, R. B. Mitchell, Jr., had become the purchaser thereof at a sale for delinquent taxes thereon, and had obtained and duly recorded his tax deed therefor, such deed of conveyance to said Carrell by said Davis, trustee, is inoperative and void.  Such being the case, you must find for the defendant.

To the giving of said instruction plaintiff objected, and objection being argued and considered by court is sustained as to Nos. 3, 4, and 5, and they are refused, and as to No. 1, objection overruled, and instruction given with amendment in words and figures following :  Defendant's instruction No. 1, as amended: "The jury are instructed that a purchaser under a tax deed takes all the right, title, and interest of every person who at the time of sale had any claim thereon, by reason of trust or otherwise, emanating from the person in whose name said land was sold, or those claiming under such person in whose name such land was sold, unless the proceedings in the clerk's office show the invalidity of the deed, or unless the taxes on the land were in fact paid for the year or years for which it was returned delinquent—and instruction No. 2 given as asked."  And to the ruling of the court in refusing said instructions Nos.

3, 4, and 5, and giving No. 2 as asked and No. 1 as amended by the court, I see no valid objection.

Bill of exceptions No. 12 was taken to the action of the court in overruling the motion to set aside the verdict and grant the defendant a new trial, which action of the court, in view of the entire evidence in the case, and the law applicable thereto, we regard as proper; and for these reasons the judgment complained of must be affirmed, with costs and damages to the defendant in error.

AFFIRMED.