DONA TOPPINS AND FRANK TOPPINS

***v.***

PAUL OSHEL, KATHERINE E. OSHEL AND RALPH COPLEY

(No. 10729)

Submitted September 14, 1955. Decided October 18, 1955.

*George S. Wallace, Jr.*, for plaintiffs in error.

No appearance for defendants in error.

HAYMOND, JUDGE:

This is an action of ejectment instituted in the Circuit Court of Wayne County in November, 1950. The plaintiffs, Dona Toppins and Frank Toppins, seek to recover from the defendants, Paul Oshel, Katherine E. Oshel and Ralph Copley, the possession of a tract of land containing ninety acres in Grant District, Wayne County, West Virginia, and three thousand dollars for damages alleged to have been caused to the land by the defendants in cutting timber on it.

To the declaration the defendants Paul Oshel and Katherine E. Oshel filed a written demurrer and a written motion to strike specified portions of the declaration each of which the court overruled. They also filed a disclaimer of any right, title or interest in and to the land described in the declaration which upon objection by the plaintiffs the court rejected. The defendants then filed their plea of not guilty to which the plaintiffs replied

generally. At the conclusion of the evidence introduced by the plaintiffs and at the conclusion of all the evidence, the defendants made separate motions to strike the evidence introduced by the plaintiffs and to direct the jury to return a verdict for the defendants. These motions the court overruled. The jury found for the plaintiffs, established a boundary between the ninety acre tract of land of the plaintiffs and an adjoining forty acre tract of land of the defendants, awarded the plaintiffs damages in the amount of $580.00, and returned a verdict in this form:

"We, the Jury, find for the plaintiffs, Dona Toppins and Frank Toppins, the land sued for in this action, and that the boundary between the plaintiffs and defendants is as follows:

"Beginning at a Hickory on a Ridge between John A. Queens Branch and Grasslick Branch of Hezekiahs Creek, also a corner to Monal and Lucinda Copley, and shown on Maps marked as Plaintiffs' Exhibits Nos. 1 and 2, as point 'B'; thence from said beginning point, N. 35° 30' W. 10 poles to a dead chestnut; thence S. 80° W. 14 poles to a black oak; thence S. 69° W. 69 poles to a chestnut oak; thence N. 35° 30' W. 14 poles to a Hickory; thence N. 63° 30' W. 8 poles to a leaning chestnut oak; thence N. 37° W. 16 poles to a hickory; thence S. 89° 30' W. 15.6 poles to a white oak; thence N. 76° W. 9 poles to a chestnut oak and hickory at the ridge road at Point 'A'.

"We further find that the plaintiffs have title to the surface in said land; and we, the jury, do find for the plaintiffs against the defendants $580.00 for timber cut and removed, and damages to the land of the plaintiffs', as sued for in the declaration.

"Geo. Sheets, Foreman."

The court overruled the motion of the defendants to set aside the verdict and grant a new trial and, by order entered July 21, 1954, rendered judgment upon the verdict in favor of the plaintiffs against all the defendants.

To that judgment this Court granted this writ of error upon the petition of the defendants.

To establish their title to the tract of ninety acres the plaintiffs introduced in evidence a deed dated December 22, 1924, from Hattie Toppins and John Toppins, her husband, to the plaintiff Frank Toppins, by the name of Franklin Toppins, which described the land by meets and bounds and contained the recital that it is the same land that was conveyed to Hattie Toppins by Ralph Pack and his wife by deed dated February 2, 1909, and a deed dated September 25, 1950, from the plaintiff Frank Toppins, by the name of Franklin Toppins, to the plaintiff Dona Toppins for the ninety acre tract. They also introduced in evidence a deed dated November 18, 1949, from Hillie Perdue, widow, Belle Osburn and Taylor Osburn, her husband, Zell Osburn and Wayne Osburn, her husband, and the plaintiffs Frank Toppins and Dona Toppins, his wife, to the defendant Paul Oshel for a tract of forty acres of land in Grant District, Wayne County, adjoining and south of the ninety acre tract, which reserved and excepted all the mineral rights and privileges subject to a right of way contained in a deed from John A. Queen to Harriet Toppins, dated April 13, 1900, and which contained the recital that the land conveyed was the same real estate that was devised to the grantors by Harriet Toppins by her will dated September 6, 1935. From these deeds it appears that the ninety acre tract and the forty acre tract were at one time held and owned by Harriet Toppins or Hattie Toppins, apparently the same person, under separate conveyances as distinct tracts of land from different grantors. By a stipulation between the parties it is agreed that the forty acre tract conveyed to the defendant Paul Oshel by the deed dated November 18, 1949, was devised to the grantors in that deed by the will of Harriet Toppins which was not introduced in evidence.

The plaintiffs, to fix the correct boundary between the ninety acre tract and the forty acre tract, offered the evi-

dence of two surveyors, one of whom surveyed and made a map of the forty acre tract. They located the boundary between the two tracts and based their finding as to its location upon the survey, the calls in the deed to the defendant Paul Oshel, and certain monuments found by them on and near the land. The courses and the distances of the sections of the boundary between the ninety acre tract and the forty acre tract are not set forth in the deed from Harriet Toppins to Frank Toppins or in the deed from him to Dona Toppins; but the courses and the distances of the boundary between the two tracts are shown by the field notes of John A. Queen, a former owner of a tract of 146 acres of which the forty acre tract is a part. These notes were dated May 6, 1885, were recorded in the office of the clerk of the county court of Wayne County on October 7, 1885, and were admitted in evidence by agreement of the parties to this action. The two surveyors produced by the plaintiffs testified that the line as located by them is the correct boundary between the ninety acre tract and the forty acre tract and the boundary, as located by them, was found and adopted by the jury in its verdict.

The description of the forty acre tract in the deed to the defendant Paul Oshel, the field notes of John A. Queen, and the testimony introduced in behalf of the plaintiffs and the defendants show a discrepancy in the distance of one segment or line of the boundary between the ninety acre tract of the plaintiffs and the forty acre tract conveyed to the defendant Paul Oshel. The designations in the deed to the defendant Paul Oshel of the course and the distance of this segment of the boundary are S. 69 degrees W. 69 poles, but the designations of the course and the distance of this same segment in the field notes of John A. Queen are South 69 degrees West 8 poles. The foregoing discrepancy concerning the distance of this segment of the boundary is the source of the conflicting contentions of the plaintiffs and the defendants as to the correct location of the dividing line between the tract of ninety acres and the tract of forty acres.

On the theory that the correct distance of the segment is 69 poles, which is adopted by the surveyors who testified in behalf of the plaintiffs, witnesses in behalf of the plaintiffs testified that the defendants Paul Oshel and Ralph Copley, after the date of the deed to the defendant Paul Oshel for the forty acre tract, entered upon a portion of the ninety acre tract containing an area of from fifteen to eighteen acres and cut and removed 186 trees containing 5800 feet of lumber of the value of $10.00 per each 1000 feet and damaged other trees and the land in that area.

The defendants likewise produced as witnesses two surveyors one of whom made a survey and a map of a portion of the disputed area and of the boundary between the ninety acre tract and the forty acre tract. From this survey and map, the calls in the field notes of John A. Queen, and the calls in the deed to the defendant Paul Oshel, they testified that the boundary located by the surveyors who testified in behalf of the plaintiffs is not the correct location of the line between the two tracts, that the mistake in the location of that line, as determined by the surveyors produced by the plaintiffs, is due to an error in the distance of the segment designated as South 69 degrees West 69 poles, and that the correct distance of that segment is 8 poles, the distance shown in the field notes, instead of the distance of 69 poles designated in the deed to the defendant Paul Oshel.

Evidence introduced in behalf of the defendants shows that pursuant to an arrangement between the defendants Paul Oshel and Ralph Copley the defendant Paul Oshel purchased and obtained a deed for the surface of the forty acre tract of land from the plaintiffs and the other devisees of Harriet Toppins dated November 18, 1949. It appears that the defendant Ralph Copley was indebted to the defendant Paul Oshel, and he purchased the tract for the purpose of obtaining timber from Copley who owned timber on other adjacent tracts and of enabling Copley to pay his indebtedness to Paul Oshel. In accord-

ance with the arrangement between the defendant Paul Oshel and the defendant Ralph Copley the defendants Paul Oshel and Katherine E. Oshel entered into a written agreement with the defendant Ralph Copley by which they agreed to sell and he agreed to purchase the forty acre tract and they agreed to convey it to the buyer when he had delivered to the seller 60,000 feet of lumber. It also appears from the evidence introduced by the defendants that the amount of lumber called for by the agreement was furnished to the defendant Paul Oshel by the defendant Ralph Copley, that the indebtedness to the defendant Paul Oshel was discharged, and that the defendant Ralph Copley was entitled to a deed for the surface of the forty acre tract prior to the commencement of this litigation but that, because of the dispute over the boundary between the ninety acre tract and the forty acre tract, no conveyance of the forty acre tract has been made by the Oshels to Copley.

It further appears from the evidence introduced in behalf of the defendants that by an agreement in writing dated July 27, 1950, between Copley and a third person named Harlan Gartin, Copley agreed to sell and Gartin agreed to buy certain timber on the forty acre tract and timber owned by Copley on two other adjoining tracts at the price of five dollars per one thousand feet of timber on the stump; that under the foregoing two agreements Copley and Gartin entered upon the forty acre tract and the disputed area and cut and removed timber; that Copley did not cut or remove any timber after July 27, 1950; that Gartin cut and removed timber during July, August, September, October and November, 1950; and that by a written agreement between Gartin and Copley dated November 21, 1950, which was introduced in evidence, Gartin reconveyed to Copley all his right, title and interest in the agreement between them dated July 27, 1950, and the timber mentioned and described in that argeement.

The defendant Paul Oshel, in his testimony, admitted that he went upon the disputed area in February, 1950,

and with a power saw cut wedges in some of the trees. He testified that the contract between him and Copley was completed about April 1, 1950; that he was not present while Copley was engaged in cutting timber; and that, though he purchased timber from Copley after April 1, 1950, he did not know where any of it was cut. The defendant Ralph Copley testified that the timber which he furnished to the defendant Paul Oshel came principally from two other tracts the timber on which was owned by the defendant Ralph Copley; that "mighty little" timber was taken from the forty acre tract; and that none of the timber furnished by him to the defendant Paul Oshel under the agreement between them was taken from the area in dispute.

The defendant Paul Oshel testified that the value of timber on the stump in 1950 was five dollars per one thousand feet and the defendant Ralph Copley testified that the value of such timber at that time was from three dollars and fifty cents to five dollars per one thousand feet.

There is no evidence that the defendant Katherine E. Oshel at any time entered upon the area in dispute or cut or removed any timber from it.

To reverse the final judgment the defendants assign as error the action of the circuit court (1) in overruling the demurrer of the defendants Paul Oshel and Katherine E. Oshel to the declaration because it does not state the estate claimed by the plaintiffs in the ninety acre tract; (2) in rejecting the disclaimer filed by the defendants Paul Oshel and Katherine E. Oshel; (3) in holding that the plaintiffs established the boundary between the ninety acre tract of the plaintiffs and the forty acre tract conveyed to the defendant Paul Oshel; (4) in holding that the plaintiffs established their title to the ninety acre tract; (5) in overruling the motion of the defendants Paul Oshel and Katherine E. Oshel to direct the jury to return a verdict for them and the motion of the defendant Ralph Copley to direct the jury to return a verdict

for him and in refusing to give Instruction No. 1 which would have directed the jury to find for the defendants Paul Oshel and Katherine E. Oshel and Instruction No. 2 which would have directed the jury to find for the defendant Ralph Copley; (6) in admitting the testimony offered by the plaintiffs of the value of the timber removed from the ninety acre tract; and (7) in overruling the motion of the defendants to set aside the verdict because it does not specify the estate of the plaintiffs in the ninety acre tract and because the amount of the damages assessed is not supported by the evidence.

Section 6, Article 4, Chapter 55, Code, 1931, provides that in an action of ejectment the plaintiff in his declaration shall state whether he claims the premises in fee or for his life or for the life of another or for years and shall specify such lives or the duration of such terms. See also *McDougal* v. *Musgrave*, 46 W. Va. 509, 33 S. E. 281; *Roach* v. *Blakey*, 89 Va. 767, 17 S. E. 228; 6 Michie's Jurisprudence, Ejectment, Section 22. The declaration omits any statement of the estate claimed by the plaintiffs and for that reason it does not meet the requirement of the statute. A declaration in an action of ejectment which fails to specify the estate claimed by the plaintiff in the premises is insufficient on demurrer. The circuit court should have sustained the demurrer to the declaration.

The disclaimer filed by the defendants Paul Oshel and Katherine E. Oshel is ineptly drawn and contains surplusage and immaterial matter, but it sufficiently identifies the land claimed by the plaintiffs and completely disavows and renounces any and all claim of those defendants to the ninety acre tract of the plaintiffs. It should not have been rejected by the circuit court. A defendant in an action of ejectment, to avoid the expense of litigation, may file a disclaimer as to land to which he makes no claim and in that manner disclaim any interest in such land. *Burdette* v. *Campbell*, 126 W. Va. 591, 30 S. E. 2d 713. Under well established practice in this

jurisdiction a defendant in an action of ejectment may at any time before verdict, by leave of the court, withdraw his plea of not guilty and file a disclaimer to the whole or to any part of the land which the plaintiff seeks to recover. *Wilson* v. *Caldwell,* 98 W. Va. 661, 127 S. E. 497; *Wilson* v. *McCoy,* 93 W. Va. 667, 117 S. E. 473; *Fisher's Heirs* v. *Camp's Heirs,* 26 W. Va. 576. The usual procedure is to enter the disclaimer of record by an order of the court. *Wilson* v. *Caldwell,* 98 W. Va. 661, 127 S. E. 497. Though technically not a plea, a disclaimer is a denial of any right or title and is a formal refusal to join issue as to all or any part of the land in controversy. *Burdette* v. *Campbell,* 126 W. Va. 591, 30 S. E. 2d 713; *Wilson* v. *McCoy,* 93 W. Va. 667, 117 S. E. 473; *Pardee* v. *Johnston,* 70 W. Va. 347, 74 S. E. 721.

Upon the question of the location of the boundary between the ninety acre tract of the plaintiffs and the forty acre tract conveyed to the defendant Paul Oshel the testimony of the witnesses produced in behalf of the respective parties is conflicting. The surveyors produced in behalf of the plaintiffs testified that the boundary located by them is the true division line. That location of the line was controverted by the surveyors introduced by the defendants. Upon this conflict in the evidence the jury has found for the plaintiffs upon that issue. That finding was approved by the circuit court and it should not be disturbed on the ground that it is against the preponderance of the evidence or without sufficient evidence to support it. In an action of ejectment it is the province of the jury to determine the weight of all the evidence. *Morris* v. *Nelson,* 136 W. Va. 722, 68 S. E. 2d 9; *Porter* v. *Staley,* 99 W. Va. 91, 127 S. E. 911.

As a general rule the plaintiff, to recover in an action of ejectment, must trace an unbroken chain of title to the state or establish title by adverse possession. 6 Michie's Jurisprudence, Ejectment, Section 4; Warvelle on the Action of Ejection, Section 233; *Furbee* v. *Under-*

*wood,* 107 W. Va. 85, 147 S. E. 472; *William James Sons Company* v. *Hutchinson,* 73 W. Va. 488, 80 S. E. 768; *Riffle* v. *Skinner,* 67 W. Va. 75, 67 S. E. 1075; *Summerfield* v. *White,* 54 W. Va. 311, 46 S. E. 154; *Holly River Coal Company* v. *Howell,* 36 W. Va. 489, 15 S. E. 214; *Low* v. *Settle,* 32 W. Va. 600, 9 S. E. 922; *Garden Realty Corporation* v. *Price,* 165 Va. 520, 183 S. E. 178; *Spriggs* v. *Jamerson,* 115 Va. 250, 78 S. E. 571. An exception to the general rule, however, and a well settled principle in the law of ejectment is that when both parties to the action claim title from a common source each party is estopped to deny the validity of the title derived from the common source and that the party having the better title so deraigned must prevail. *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39; *Porter* v. *Staley,* 99 W. Va. 91, 127 S. E. 911; *William James Sons Company* v. *Hutchinson,* 73 W. Va. 488, 80 S. E. 768; *Winding Gulf Colliery Company* v. *Campbell,* 72 W. Va. 449, 78 S. E. 384; *Summerfield* v. *White,* 54 W. Va. 311, 46 S. E. 154; *Carrell* v. *Mitchell,* 37 W. Va. 130, 16 S. E. 453; *Low* v. *Settle,* 32 W. Va. 600, 9 S. E. 922; *Laidley* v. *Central Land Company,* 30 W. Va. 505, 4 S. E. 705; *McClung* v. *Echols,* 5 W. Va. 204.

When both parties assert title from a common source the plaintiff in an action of ejectment is not required to prove his title beyond the common source or to trace his title to the state. *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39; *Furbee* v. *Underwood,* 107 W. Va. 85, 147 S. E. 472; *William James Sons Company* v. *Hutchinson,* 73 W. Va. 488, 80 S. E. 768; *Winding Gulf Colliery Company* v. *Campbell,* 72 W. Va. 449, 78 S. E. 384; *Carrell* v. *Mitchell,* 37 W. Va. 130, 16 S. E. 453; *Low* v. *Settle,* 32 W. Va. 600, 9 S. E. 922. Likewise when the plaintiff in an action of ejectment relies upon and establishes his title by adverse possession he is not required to trace his title to the state. *West Virginia Pulp and Paper Company* v. *Natwick and Company,* 123 W. Va. 753, 21 S. E. 2d 368; *Wiley* v. *Hatcher,* 70 W. Va. 92, 73 S. E. 245; *Riffle* v. *Skinner,* 67 W. Va. 75, 67 S. E. 1075.

The only evidence introduced by the plaintiffs to establish their title to the ninety acre tract and to trace their title to a common source consisted of a deed dated December 22, 1924, from Hattie Toppins and John Toppins, her husband, to the defendant Frank Toppins for the ninety acre tract, which contained the recital that it was the same land that was conveyed to Hattie Toppins by Ralph Pack and wife by deed dated February 2, 1909; a deed dated September 25, 1950, from the plaintiff Frank Toppins to the plaintiff Dona Toppins for the ninety acre tract; and a deed dated November 18, 1949, from the devisees of Hattie Toppins to the defendant Paul Oshel for the surface of the forty acre tract which shows that the forty acre tract was conveyed to Hattie Toppins by John A. Queen by deed dated April 13, 1900, and contains the recital that it was the same real estate that was devised to the grantors in the deed to the defendant Paul Oshel by Hattie Toppins by her will dated September 6, 1935. By stipulation the parties agreed that the forty acre tract was devised to the grantors in the deed to the defendant Paul Oshel by the will of Hattie Toppins. From these title papers it clearly appears that, though Hattie Toppins at one time was the owner of both the ninety acre tract and the forty acre tract which adjoin, each tract was conveyed to her as a separate tract by a different grantor.

The rule that the plaintiff in an action of ejectment is not required to trace his title beyond the common source is based upon estoppel and the defendant is not permitted to assume the inconsistent position of claiming both under and against the same title. *Summerfield* v. *White*, 54 W. Va. 311, 46 S. E. 154; *McClung* v. *Echols*, 5 W. Va. 204. The rule applies only when both parties to an action of ejectment claim title to the same property. *Sinclair* v. *Friedlander*, 197 Ga. 797, 30 S. E. 2d 398. It does not apply when it affirmatively appears that the real dispute between the parties involves the location of a boundary between two distinct tracts of land, one of which the common grantor derived from one source and conveyed

to the plaintiff or his predecessor in title and the other of which the common grantor derived from another source and conveyed to the defendant or his predecessor in title. In that situation there is no inconsistency in the defendant's claim of title and the defendant is not estopped to deny that the grantor of the plaintiff had title to the land in dispute. *Jennings* v. *Marston,* 121 Va. 79, 92 S. E. 821, 7 A. L. R. 855. See also *Butt* v. *Mastin,* 143 Ala. 321, 39 So. 217. Though in numerous instances the terms common grantor and common source of title under the particular facts have the same meaning those terms are not always synonymous and interchangeable. *Jennings* v. *Marston,* 121 Va. 79, 92 S. E. 821, 7 A. L. R. 855. In some prior decisions of this Court in actions of ejectment in which the parties asserted title from a common source the terms common grantor and common source of title have been regarded and used as synonymous but in each such instance the parties claimed title to the same property. Those terms are not synonymous in the case at bar. Here the real dispute between the plaintiffs and the defendants is over the true location of the boundary between the ninety acre tract and the forty acre tract and though the plaintiffs and the defendant Paul Oshel claim title which is derived from Hattie Toppins, a common grantor, who formerly owned both tracts under separate deeds to her from different grantors, the plaintiffs and the defendant Paul Oshel do not claim title to the same property and the claim of title of each of them is to a separate and distinct tract of land.

Though the parties claim title from a common grantor, the plaintiffs have not traced their title to the ninety acre tract to a common source. They have not traced it to the state and they have not established it by adverse possession. The firmly established general rule in ejectment is that the plaintiff must recover upon the strength of his own title and not upon the weakness of the title of the defendant. *Morris* v. *Nelson,* 136 W. Va. 722, 68 S. E. 2d 9; *Rolfe Coal Mining Company* v. *Redden,* 102 W. Va.

59, 135 S. E. 171; *Sands* v. *Holbert*, 93 W. Va. 574, 117 S. E. 896; *William James Sons Company* v. *Hutchinson*, 73 W. Va. 488, 80 S. E. 768; *Taylor* v. *Russell*, 65 W. Va. 632, 64 S. E. 923; *Wade* v. *McDougle*, 59 W. Va. 113, 52 S. E. 1026; *Summerfield* v. *White*, 54 W. Va. 311, 46 S. E. 154; *Ronk* v. *Higginbotham and Carrier*, 54 W. Va. 137, 46 S. E. 128; *Holly River Coal Company* v. *Howell*, 36 W. Va. 489, 15 S. E. 214; *Low* v. *Settle*, 32 W. Va. 600, 9 S. E. 922; *Witten* v. *St. Clair*, 27 W. Va. 762; *Barton's Heirs* v. *Gilchrist*, 19 W. Va. 223; *Jones* v. *Chesapeake and Ohio Railroad Company*, 14 W. Va. 514.

As the evidence introduced in behalf of the plaintiffs is not sufficient to establish title in them to the ninety acre tract the motion of the defendants Paul Oshel and Katherine E. Oshel to strike the evidence of the plaintiffs and direct a verdict for those defendants and the similar motion of the defendant Ralph Copley should have been sustained and, those motions having been overruled, Instruction No. 1 offered by the defendants Paul Oshel and Katherine E. Oshel and Instruction No. 2 offered by the defendant Ralph Copley should have been given.

The evidence of the value of the timber cut and removed from the disputed area, admitted over the objection of the defendants and of which they complain, is the testimony of one of the surveyors produced in behalf of the plaintiffs. The objection to the testimony of this witness on that point is that he was not qualified to testify as to the value of the timber. He testified that he had measured timber about thirty years previously and could calculate the number of feet of timber from stump measurements; that no change had occurred in the measurement formula which he had previously used; that he measured and counted the stumps from which the timber had been cut; that the amount of timber removed was 5800 feet; that he was acquainted with the fair market value of standing timber in the years 1950 and 1951; and that the value of the timber in August, 1950, was $10.00 per 1,000 feet. On cross-examination, however, he said

he did not know the price of the timber in August, 1950. The conflict in his testimony as to the value of the timber, caused by the statement that he did not know the price in 1950, affected the credibility of his testimony but did not render it incompetent. A witness is not required to be qualified in the highest degree or in any particular degree to render his opinion of value or quantity admissible. The opinion of a witness as to value or quantity is admissible in evidence if he has some peculiar qualification and has more knowledge of the subject than jurors are ordinarily supposed to possess. *Cochrane* v. *Craig*, 88 W. Va. 281, 106 S. E. 633. Generally if a witness has some qualifications with relation to the matter about which he undertakes to testify he should be permitted to give his opinion. *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Buckhannon and Northern Railroad Company* v. *Great Scott Coal and Coke Company*, 75 W. Va. 423, 83 S. E. 1031; *Cincinnati Gas Transportation Company* v. *Wilson*, 70 W. Va. 157, 73 S. E. 306; *Kay* v. *Glade Creek and Raleigh Railroad Company*, 47 W. Va. 467, 35 S. E. 973. Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Byrd* v. *Virginian Railroad Company*, 123 W. Va. 47, 13 S. E. 2d 273; *State* v. *Brady*, 104 W. Va. 523, 140 S. E. 546; *Lutz* v. *Allegheny County*, 327 Pa. 587, 195 A. 1; *Brown* v. *Borough of Castle Shannon*, 318 Pa. 363, 178 A. 678; 32 C. J. S., Evidence, paragraph 458b. A witness who is acquainted with the location and the character of land and its adaptability to particular purposes may give his opinion as to its value and, though not an expert and not regarded as such, his evidence relative to value is competent and its weight and its credibility are for the jury. *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Virginian Power Company* v. *Brotherton*, 90 W. Va. 155, 110

S. E. 546. The testimony of the witness offered by the plaintiffs as to the value of timber was admissible and it was the province of the jury to determine its weight and its credibility.

As already indicated the verdict returned by the jury does not specify the estate of the plaintiffs in the land which the jury found they were entitled to recover. In that respect the verdict in favor of the plaintiffs does not satisfy the requirement of the statute that a verdict in an action of ejectment shall specify the estate found in the plaintiff whether it be in fee or for life, and state for whose life, or whether it be a term of years, and specify the duration of such term. Section 18, Article 4, Chapter 55, Code, 1931. The verdict of a jury in an action of ejectment which finds that the plaintiff is entitled to recover the land in controversy but fails to comply with the statutory requirement that it shall specify the estate found in the plaintiff is fatally defective and should be set aside. *Yonker* v. *Grimm,* 101 W. Va. 711, 131 S. E. 695; *Oney* v. *Clendenin,* 28 W. Va. 34; *Low* v. *Settle,* 22 W. Va. 387. The verdict does not specify the estate of the plaintiff, is fatally defective, and for that reason it will be set aside by this Court.

There is no showing in the evidence that the defendant Katherine E. Oshel at any time entered upon or possessed the land claimed by the plaintiffs or that she cut and removed any timber from it. As to her the verdict is without evidence to support it and in so far as it contains a finding against her it should have been set aside. When a verdict of a jury is without sufficient evidence to support it, or is plainly against the decided weight and preponderance of conflicting evidence, it will, on proper motion, be set aside by the court. *Ward* v. *Smith,* 140 W. Va. 565, 86 S. E. 2d 539; *Kap-Tex* v. *Romans,* 136 W. Va. 489, 67 S. E. 2d 847; *Cannady* v. *Chestonia,* 106 W. Va. 254, 145 S. E. 390; *Palmer* v. *Magers,* 85 W. Va. 415, 102 S. E. 100; *Griffith* v. *American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Kelley* v. *Aetna Insurance Company,*

75 W. Va. 637, 84 S. E. 502; *Sims* v. *Carpenter, Frazier and Company,* 68 W. Va. 223, 69 S. E. 794; *Coalmer* v. *Barrett,* 61 W. Va. 237, 56 S. E. 385; *Chapman* v. *Liverpool Salt and Coal Company,* 57 W. Va. 395, 50 S. E. 601.

The evidence is also insufficient to support the finding of damages in the sum of $580.00. The maximum amount of damages shown by the evidence in behalf of the plaintiffs is the value of 5800 feet of timber cut and removed at the rate of $10.00 per 1,000 feet or $58.00, instead of $580.00; and the value of that quantity of timber, according to the evidence introduced in behalf of the defendants, at the rate of $3.50 to $5.00 per 1,000 feet, is from $20.30 to $29.00. There is no other specific evidence which sustains or justifies the finding of the jury of damages of $580.00. A verdict clearly in excess of the amount which the evidence shows the plaintiff is justly entitled to recover should be set aside by the trial court. *Thomason and Beggs* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731; *Drummond* v. *Cook Motor Lines,* 136 W. Va. 293, 67 S. E. 2d 337; *Chesapeake and Ohio Railway Company* v. *Allen,* 113 W. Va. 691, 169 S. E. 610; *Welty* v. *Baer,* 107 W. Va. 226, 148 S. E. 193.

The final judgment of the Circuit Court of Wayne County is reversed, the verdict is set aside, and this case is remanded to that court for a new trial which is hereby awarded the defendants.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded;*
> *case remanded.*